**William CHAE-SIK LEE and Grace Koom-Soon Lee, Appellants**

v.

**Robert F. KENNEDY, Attorney General of the United States, Appellee.**

**No. 15987.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 10, 1961.

Decided June 29, 1961.

232

Mr. David Carliner, Washington, D. C., with whom Mr. Jack Wasserman, Washington, D. C., was on the brief, for appellant.

Mr. Gilbert Zimmerman, Sp. Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty. at the time the brief was filed, and Carl W. Belcher, Asst. U. S. Atty. at the time the brief was filed, were on the brief, for appellee.

Before WILBUR K. MILLER, Chief Judge, and EDGERTON and BAZELON, Circuit Judges.

EDGERTON, Circuit Judge.

Appellants, husband and wife, are Korean nationals. The husband was admitted to this country in 1953 as a non-immigrant student. It is not disputed that the wife's status for present purposes depends upon the husband's. In 1954 he applied for and obtained a temporary one-year change of status to a non-immigrant exchange visitor under the United States Information and Educational Exchange Act of 1948. He applied for and obtained extensions of his exchange visitor status in 1955, 1956,

1957 and 1958. On September 22, 1959, he filed an application for an adjustment of his status to permanent resident alien. The Attorney General refused to accept the application because the appellant "had the status of an exchange alien and has not had the required two years residence abroad, or a waiver thereof". Appellant seeks a judgment declaring that the Immigration and Naturalization Service's refusal to act upon his application and grant the adjustment of status is contrary to law, and an injunction restraining appellee from deporting appellants. This appeal is from a summary judgment for appellee.

■ Section 201(b) of the Information and Educational Exchange Act as amended in 1956 provides:

"No person * * * acquiring exchange visitor status after admission shall be eligible to apply * * for adjustment of status to that of an alien lawfully admitted for permanent residence, until it is established that such person has resided and been physically present in a cooperating country or countries for an aggregate of at least two years following departure from the United States: Provided * * * That the provisions of this subsection shall apply only to those persons acquiring exchange visitor status subsequent to June 4, 1956." 22 U.S. C.A. § 1446(b).

Appellant says the quoted proviso exempts him from the two-year absence requirement because he had acquired exchange visitor status before June 4, 1956. Appellee says "acquiring" applies to extensions as well as original acquisitions of exchange visitor status and therefore the proviso does not exempt appellant.

■ The report of the Senate Foreign Relations Committee contains this statement: "It should be emphasized * * * that the proviso is not intended to preclude application of the 2-year-absence requirement to any exchange visitor who, subsequent to the enactment of the present bill, may apply for an ex-

tension of the period of time for which he was admitted." S.Rep. No. 1608, 84th Cong., 2d Sess., p. 4. The Act has been understood and enforced, we think correctly, in the sense that the Committee and presumably Congress intended. Appellants did not acquire permanent status as exchange visitors, if indeed there is or was any such thing. They acquired, from year to year, temporary exchange visitor status. Some of these acquisitions occurred after June 4, 1956.

■ The Attorney General did not tell the appellant that the statute prohibited him from accepting appellant's application. He told him that § 245.1, Title 8, Code of Federal Regulations, prohibited acceptance of the application. That regulation, in its present form, took effect February 25, 1959. It provides that "No alien who has had the status of an exchange alien in the United States may apply for adjustment of status unless" he has met the requirements of Section 201(b). 24 F.R. 1375. Appellants say this regulation is invalid both because it is broader than the statute and because it was not adopted in accordance with the Administrative Procedure Act. Appellants argue that "If the regulation is invalid, the ground upon which the appellee has denied the appellants adjustment of their status to that of permanent residents * * * must fall and the decision below [must be] reversed." Appellants cite as supporting this proposition Securities & Exchange Commission v. Chenery Corp., 318 U.S. 80, 87, 88, 63 S.Ct. 454, 87 L.Ed. 626.

In Chenery the Securities & Exchange Commission had based its order on what it believed, erroneously, to be a judicially established principle of equity. Actually the principle in question had not been established judicially, legislatively, or administratively. Although the Commission itself could have established the supposed principle if it had chosen to do so, the Supreme Court vacated the Commission's order. The Court said: "Since the decision of the Commission was explicitly based upon the applicability of principles of equity announced by courts,

its validity must likewise be judged on that basis. The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." Id., 318 U.S. at page 87, 63 S.Ct. at page 459.

The sentences just quoted from Chenery, read without the Supreme Court's explanation of them, would appear to sustain appellants' argument. But the explanation which immediately follows those sentences in the Court's opinion refutes the argument. The Court said: "In confining our review to a judgment upon the validity of the grounds upon which the Commission itself based its action, *we do not disturb the settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.'* Helvering v. Gowran, 302 U.S. 238, 245 [58 S.Ct. 154, 82 L.Ed. 224]. The reason for this rule is obvious. *It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate.* But it is also familiar appellate procedure that where the correctness of the lower court's decision depends upon a determination of fact which only a jury could make but which has not been made, the appellate court cannot take the place of the jury. *Like considerations govern review of administrative orders.* If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment." (Emphasis added.) Id., 318 U.S. at page 88, 63 S.Ct. at page 459. This makes it clear that the Court's statement, "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based", is to be understood with a qualification; the order must be judged upon the grounds upon which action was based, unless the ap-

pellate court concludes that the decision "already made * * * should properly be based on another ground within the power of the appellate court to formulate."

The qualification covers this case. In Chenery, remand was necessary because the administrative order was "valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made". In the present case, on the other hand, the decision "already made * * * should properly be based on another ground", i. e. the statute. Section 201(b) of the statute requires that relief be denied to these appellants. Remand would therefore be "wasteful". If there were a remand, the Attorney General would necessarily take the action he has already taken. It is immaterial that he would not explain his action as he has already explained it. Since nothing required the Commission, in Chenery, to take on remand the action it had already taken, the Supreme Court's decision in Chenery does not apply to this case.

Though it is not necessary to the validity of the action the Attorney General took, it is perhaps worth noting that ultimately and in substance, though not immediately and in form, he relied on the statute. For the following reasons, in practical effect the regulation meant no more than the statute. An alien who, in the language of the regulation, "has had" the status of an exchange alien, may be understood to mean an alien who has had that status up to the time when he applies for adjustment of status. Appellee says, and appellants do not deny, that "No exchange visitor admitted to the United States before February 25, 1959—the date when this particular regulation was first promulgated in the indicated form—could still have been enjoying exchange-visitor status in the United States as of February 25, 1959 (or the present time) without having sought and procured an extension or extensions of stay as an exchange visitor after enactment of the 1956 amendment." It follows that although the words of the

regulation appear broader than those of the statute, the regulation like the statute actually applies to "persons acquiring exchange visitor status subsequent to June 4, 1956" and to no other persons.

Affirmed.

WILBUR K. MILLER, Chief Judge, dissents.